**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **HOMER BAKHTIARY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-21-256** |
| **MONTGOMERY COUNTY, MARYLAND,** | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Homer Bakhtiary brought this civil action against Defendant Montgomery County, Maryland alleging unlawful discrimination in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C § 623 ("ADEA"), and for unlawful discrimination and/or retaliation for taking medically necessary leave under the Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* ("FMLA"). ECF No. 14. Pending before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint. [1] ECF No. 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint is granted.

---

[1] Also pending before the Court is Defendant's previous Partial Motion to Dismiss, ECF No. 11, which is denied as moot in light of Plaintiff's Amended Complaint, which was filed as of right, per Federal Rule of Civil Procedure 15(a).

## I.     BACKGROUND[2]

Plaintiff Homer Bakhtiary, a 69-year-old Iranian American man, is an employee of the

Defendant in its Department of General Services ("DGS") at the Division of Facilities

Management Building located at 1301 Seven Locks Road, Potomac, Maryland. ECF No. 14

¶¶ 19, 13. Plaintiff was hired as an Engineer III on or about April 15, 2002. *Id.* ¶ 14. At all times

relevant to this action, Plaintiff was over forty (40) years of age. *Id.* ¶ 2. Plaintiff's direct

supervisor, Suresh Patel, is an employee of the Defendant. *Id.* ¶ 18. Additionally, Plaintiff suffers

from a disability relating to a heart condition called Paroxysmal Supraventricular Tachycardia

(PSVT). *Id.* ¶ 36. Plaintiff alleges that this condition limits the duties he can perform or the

environment he can work in because the condition can worsen from stress, fear, anger, and

anxiety, and can cause a tachycardic event in which Plaintiff's heart beats at an unsafe level. *Id.*

This can increase the risk of various health issues including "heart attack, heart failure, increased

thyroid activity, anemia, heart palpitations, chest pain, shortness of breath[.]" *Id.*

### A.  2017 Incidents and EEOC Discrimination Charge

Plaintiff alleges that the first incident of discrimination against him occurred on March

14, 2017, when his direct supervisor, Mr. Patel, marked plaintiff absent without leave (AWOL)

and deducted ten hours from his pay when he was unable to report to work due to severe winter

weather conditions. ECF No. 14 ¶¶ 16, 18. Plaintiff alleges that his inability to report to work

due to the unsafe weather conditions was not a violation of Defendant's rule, code, or policies

because, as a non-essential worker, Plaintiff was not required to report to work on severe weather

days. *Id.* ¶ 17. Plaintiff asserts that Mr. Patel's decision to mark Plaintiff as AWOL, rather than

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 14, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

as excused due to a weather-related absence, was "motivated by unlawful bias and prejudice by Mr. Patel against Plaintiff based on Plaintiff's national origin (Iranian American) and Plaintiff's age (69)." *Id.* ¶ 19. Plaintiff further asserts that other non-essential workers, not of Iranian American decent and not over the age of forty, who were not able to attend work due to the severe weather conditions, were not marked AWOL for missing work due to those weather conditions. *Id.* ¶¶ 20–21.

Plaintiff then alleges two separate incidents of discrimination occurring between May and August 2017.  First, Plaintiff alleges that on or about May 2017, Mr. Patel required Plaintiff to provide Mr. Patel with "minute by minute by reporting," which lasted until September 8, 2017. *Id.* ¶ 27. Plaintiff asserts that Mr. Patel did not require other professionals under his supervision who were not Iranian American and/or were not over the age of forty to provide Mr. Patel with minute-by-minute reporting on a daily basis, and that this request for reporting was motivated by "unlawful bias and animus based on Plaintiff's National Origin and/or Age." *Id.* ¶¶ 28–29. Second, Plaintiff alleges that another incident of discrimination occurred in August 2017 when Mr. Patel did not promptly respond to Plaintiff's request to take approximately one week of vacation, which he formally requested on August 3, 2017. *Id.* ¶¶ 22–23. Specifically, Plaintiff alleges that Mr. Patel waited until August 8, 2017 to respond to Plaintiff's request and that he "instructed Plaintiff that he must complete a job task before Mr. Patel would approve Plaintiff's vacation request," which Plaintiff asserts was in breach of a Union agreement requiring a supervisor to approve or deny leave within five days. *Id.* ¶ 23. Plaintiff alleges that this delay required his leave to be resubmitted on August 11, 2017. *Id.* ¶ 24. Plaintiff asserts that other similarly situated employees who were not Iranian American and not over the age of forty "that requested vacation days to which they were otherwise entitled received prompt approval of

vacation requests without delay and without additional work demands as a condition of granting the vacation requests." *Id.* ¶ 25–26.

On August 14, 2017, Plaintiff filed a charge of discrimination[3] with the United States Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against Plaintiff based on his national origin (Iranian American) and his age (over 40) ("2017 EEOC Discrimination Charge"). *Id.* ¶¶ 30–31. Plaintiff contends that Defendant, including Mr. Patel, became aware of the 2017 EEOC Discrimination Charge within about one month of its filing, or by approximately September 14, 2017. *Id.* ¶ 32. Plaintiff then alleges that Defendant, through Mr. Patel and others, subjected Plaintiff to "unfair disparate treatment and other retaliatory harassment" after learning of his 2017 EEOC Discrimination Charge including the following: (1) a below expectations performance review in October 2017; (2) denials of leave request in August 2017; (3) undated but "continual and ongoing" "hurtful and unfriendly treatment by managers and supervisors; (4) micromanaging and continued demands that Plaintiff provide minute-by-minute reports of his work, which continued "well after" the 2017 EEOC Discrimination Charge; (5) false allegations from Mr. Patel that Plaintiff "failed to generate work;" and (6) rejecting Plaintiff's "late 2017" request for a lateral transfer within Montgomery County. *Id.* ¶¶ 33, 35. Plaintiff alleges that these issues "created a hostile work environment for the Plaintiff." *Id.* ¶ 34.[4]

On September 27, 2018, the EEOC issued a Dismissal and Notice of Rights pertaining to the 2017 EEOC Discrimination Charge informing Plaintiff that it was closing its file on the charge because "the EEOC [was] unable to conclude that the information obtained establishes

---

[3] This is EEOC Charge Number 531-2017-02204. ECF No. 14 ¶ 31.

[4] The "hostile work environment" language was not present in Plaintiff's original Complaint. ECF No. 7.

violations of the statute." ECF No. 16-3.[5] Further, it notified Plaintiff that any lawsuit stemming

from the allegations in the 2017 EEOC Discrimination Charge must be brought within 90 days of

Plaintiff's receipt of the notice. *Id.* In the Amended Complaint, Plaintiff does not allege that he

filed any lawsuit based on the 2017 EEOC Discrimination Charge. *See generally* ECF No. 14.

### B. 2018 Incidents and EEOC Retaliation Charge and 2019 Incidents

Plaintiff alleges several incidents of retaliation in 2018 including an undated mediocre

performance review, which Plaintiff alleges differed from his years of positive reviews, and

conditional approvals of leave requests that left him unable to use his union rights in September

2018. ECF No. 14 ¶ 33.  On or about October 2018, Plaintiff alleges that while on a phone call

with Mr. Patel about a work assignment, Mr. Patel, with an "aggressive tone," shouted at

Plaintiff, which caused Plaintiff's PSVT to intensify, and Plaintiff suffered from a tachycardic

event. *Id.* ¶ 37.

On October 18, 2018, Plaintiff filed another charge of discrimination with the EEOC[6]

labeled as "retaliation" and "continuing action" alleging retaliation against Defendant for

Plaintiff engaging in the protected activity of filing the 2017 EEOC Discrimination Charge

("2018 EEOC Retaliation Charge"). *Id.* ¶ 38; ECF No. 16-4. In the 2018 EEOC Retaliation

Charge, Plaintiff alleged that since filing his 2017 EEOC Discrimination Charge, he had been

"subjected to harassment" and detailed several of the same, though mostly undated, allegations

set forth in the Amended Complaint, *see* ECF No. 14 ¶ 33, including the October 2017 below

---

[5] When considering a motion to dismiss an employment discrimination claim, a court may consider documents attached to the motion if they are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiffs' relevant filings with the EEOC . . . [not] attached to the complaint, because the [plaintiffs] rely on these documents to satisfy the . . . time limit requirements."). !

[6] This is EEOC Charge Number 531-2019-00201. ECF No. 14 ¶ 38.

expectations performance review, "denials of leave requests, conditional approvals of leave requests which have left [Plaintiff] unable to utilize [his] union rights, requests that [he] provide hour-by-hour reports of [his] activity, and inaccurate allegations by Suresh Patel, Acting Supervisor, that [he has] not generated any work." ECF No. 16-4. Plaintiff further alleged that he was provided "no reasonable explanation for the treatment to which [he was] subjected," and that he believed he was being discriminated against "in retaliation for engaging in protected activity[,] in violation of Title VII of the Civil Rights Act of 1964[,] and the Age Discrimination in Employment Act of 1967[.]" *Id.* Plaintiff alleges that Defendant, including Mr. Patel, was aware of the 2018 EEOC Retaliation Charge within about one month of its filing, or by approximately November 18, 2018. ECF No. 14 ¶ 39.

Plaintiff next alleges that on or about December 13, 2018, he sent an email to Mr. Patel informing him that Plaintiff's heartbeat spiked due to Mr. Patel shouting at him and that, as a result of his spiked heartbeat, he was admitted to Shady Grove Hospital from December 13, 2018, through December 14, 2018. *Id.* ¶ 40.  Then, on or about December 26, 2018, Plaintiff alleges that he submitted a doctor's note to Defendant in which the doctor prescribed that Plaintiff refrain from work and rest at home "until further notice to permit Plaintiff to calm himself and protect his heart condition."  *Id.* ¶ 41.

On or about January 22, 2019, Plaintiff informed Defendant, including Mr. Patel, that Plaintiff would be on approved FMLA leave until March 13, 2019, returning to work on March 14, 2019. *Id.* ¶ 42. Plaintiff informed Defendant that he wanted Defendant to concurrently use and apply his earned and accrued Paid Time Off (PTO) while he was on FMLA leave to ensure that he would continue to receive compensation and corresponding benefits during his leave. *Id.* ¶ 43. Plaintiff further alleges that Defendant "refused to do so and marked Plaintiff as AWOL for

6

over One Hundred Hours between January 7, 2019 and February 1, 2019," which caused Plaintiff's pay and benefits to become suspended while on approved leave, in retaliation for Plaintiff filing (1) the 2017 EEOC Discrimination Charge, (2) the 2018 EEOC Retaliation Charge, and (3) taking approved FMLA leave, *id.* ¶¶ 44–46.

Approximately one month later, on February 22, 2019, Plaintiff, along with his doctor, submitted an ADA reasonable accommodation request to Defendant based on Plaintiff's heart-related medical condition. *Id.* ¶¶ 47, 49. Specifically, Plaintiff's doctor recommended that Defendant transfer Plaintiff to another department so that he would not have to work under the supervision, direction, or management of Mr. Patel. *Id.* ¶¶ 55, 51–54. Plaintiff contends that Defendant refused his request and "did not give Plaintiff's medically documented ADA request the scrutiny or consideration it deserved" in retaliation for Plaintiff taking approved FMLA leave "associated with the same disability," as well as in retaliation for filing the 2017 EEOC Discrimination Charge. *Id.* ¶¶ 56–57. Plaintiff also alleges that Defendant "improperly ignored" a Union grievance filed the same month, which also requested that Mr. Patel be removed as Plaintiff's supervisor "citing safety and health reasons." *Id.* ¶ 58.

Upon Plaintiff's return to work in March 2019, Plaintiff alleges that he was still placed under the direct supervision of Mr. Patel and that "immediately," Mr. Patel continued to engage Plaintiff "with increased aggression and vitriol," and "to shout at Plaintiff for erroneously perceived work deficiencies." *Id.* ¶¶ 59, 61.  Plaintiff also alleges that, since and including March 2019, he notified Defendant "on multiple and ongoing occasions" that Mr. Patel's management and supervisory method of "shouting and related aggressive behavior" was dangerous to Plaintiff's health and exacerbated his documented medical condition. *Id.* ¶ 62. Plaintiff further alleges that upon his return to work, he experienced additional "disparate treatment and other

retaliatory harassment" by Defendant including (1) failing to timely approve Plaintiff's March

2019 sick leave; (2) marking Plaintiff AWOL in March 2019 after he requested leave; (3)

blaming Plaintiff in April 2019 for the lack of progress and reporting about his projects when he

was on FMLA leave when it was the duty of Mr. Patel; (4) giving Plaintiff a bad performance

review in September 2019; and (5) a "mediocre" performance review in June 2020. *Id.* ¶ 63.

These retaliatory performance reviews from 2017-2020, Plaintiff alleges, "were a drastic change

from Plaintiff's past reviews and have greatly hurt his chances at getting a promotion or seeking

a lateral position[.]" *Id.* ¶ 64.

### C. Procedural History

On November 25, 2020, after having received a Dismissal and Notice of Rights on

October 21, 2020, *see* ECF No. 14 ¶ 11, Plaintiff filed the original Complaint in the Circuit Court

for Montgomery County, Maryland alleging three counts: retaliation for engaging in a protected

activity under the ADEA (Count I), retaliation for engaging in a protected activity under Title

VII (Count II), and retaliation for engaging in a protected activity under the FMLA (Count III).

ECF No. 7. The original Complaint was served on Defendant on January 5, 2021, ECF No. 1 at

1,[7] and Defendant filed a notice of removal with this Court on January 29, 2021. *Id.* Defendant

filed its first Partial Motion to Dismiss on February 5, 2021, ECF No. 11, and Plaintiff filed both

his Response in Opposition to the Partial Motion to Dismiss, ECF No. 15, and Amended

Complaint, ECF No. 14, on February 19, 2021. The Amended Complaint alleges the same three

counts of retaliation along with new allegations of a hostile work environment incorporated into

all three counts, plus additional factual allegations in support of these claims. *See generally* ECF

No. 14-1. Defendant filed the now pending Partial Motion to Dismiss Plaintiff's Amended

---

[7] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Complaint, ECF No. 16, on March 5, 2021, and Plaintiff filed his Response in Opposition to Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 17, on March 19, 2021. Defendant filed his Reply to Plaintiff's Response in Opposition to Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 18, on April 2, 2021.

## II.    STANDARD OF REVIEW

Defendant argues that the Court should dismiss part of this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citations and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Additionally, [a] court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## III.    DISCUSSION

In the instant action, Plaintiff claims that Defendant subjected him to unlawful retaliation in violation of the anti-retaliation protections set forth in Title VII, the ADEA, and the FMLA. ECF No. 14 ¶¶ 12, 77. In response, Defendant seeks dismissal with prejudice of (1) Plaintiff's retaliation claims under Counts I and II stemming from allegations occurring prior to December 22, 2017 because they are "barred as untimely and the alleged retaliatory actions were not close in time to the protected activity;" (2) Plaintiff's hostile work environment claims under Counts I, II, and III for failure to exhaust administrative remedies and "because hostile work environment under the FMLA is a fictitious claim;" and (3) Plaintiff's allegation under Count III that Defendant failed to transfer Plaintiff to a different supervisor because it as an "improper claim under the American with Disabilities Act of 1990 ("ADA") that Plaintiff is attempting to

10

interject as an FMLA retaliation claim," and because "supervisory transfer is not a reasonable accommodation." ECF No. 18 at 1. The Court will consider each issue separately.

### A. Administrative Exhaustion and Time-Bar

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3(a); *see e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018). Similarly, the ADEA forbids an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). It also prohibits an employer from retaliating against an employee for engaging in protected activity, such as making a charge of age discrimination or opposing a practice made unlawful by the ADEA. 29 U.S.C. § 623(d). *See also Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 171–72 (4th Cir. 2020).

Before bringing a suit under Title VII or the ADEA, however, a plaintiff must first exhaust administrative remedies. *See* 42 U.S.C § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA). To do so, a Plaintiff must typically file a charge of discrimination with the EEOC or an appropriate state or local agency within 180 days of the alleged unlawful employment practice, however, in Maryland, the limitations period is extended to 300 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001) ("In a deferral state such as Maryland, a charge is timely if it is filed with

the Commission within 300 days of the last alleged act of discrimination[.]"). The same

limitation period applies for ADEA claims. *See* 29 U.S.C. § 626(d)(1)(b). Further, federal

discrimination charges under Title VII must be filed within ninety days after EEOC gives the

claimant notice of his or her right to sue. 42. U.S.C. § 2000e-5(f)(1); *see also Vogel v. Am. Home*

*Products Corp. Severance Pay Plan*, 122 F.3d 1065 (Table), 1997 WL 577578, at *1 n.2 (4th

Cir. 1997) (recognizing that "[t]he 90–day statute of limitations applies both to the

discrimination and retaliation claims."). "A claimant who fails to file a complaint within the

ninety-day statutory time period mandated by Title VII generally forfeits the right to pursue his

claims" and "[t]he ninety-day period begins as of receipt of the right-to-sue letter from the

[EEOC]." *Mann v. Standard Motor Products, Inc.*, 532 F. App'x 417, 418 (4th Cir. 2013).

Additionally, "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil

suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (citation omitted).  And

"[o]nly those discrimination claims stated in the initial charge, those reasonably related to the

original complaint, and those developed by reasonable investigation of the original complaint

may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*,

80 F.3d 954, 963 (4th Cir. 1996) (citations omitted).

  Here, Defendant contends that Plaintiff has not exhausted his administrative remedies

with regard to his hostile work environment claims, which are grafted onto each individual count

in the Complaint. In his briefing, Plaintiff makes contradictory statements with respect to

whether he intends to assert claims for hostile work environment or simply allege the creation of

a hostile work environment as one form of retaliation. Specifically, Plaintiff claims both that he

"has not added new claims" of hostile work environment because he merely "clarified the form

of retaliation" to include "a hostile work environment," ECF No. 17 at 6, while also stating that

"Plaintiff's Amended Complaint alleges and describes that Defendant subjected Plaintiff to an unlawful hostile work environment," *id.* at 7. Plaintiff cannot have it both ways and because the distinction impacts the permissible scope of the claim, the issue must be resolved.

On October 21, 2020, the EEOC issued Plaintiff a right-to-sue letter advising him that he must file his claims within ninety days of the receipt of that notice. ECF No. 14 ¶ 11. Plaintiff then timely filed his claims for *retaliation* in the original Complaint on November 25, 2020, ECF No. 7, which was based on his 2018 EEOC Retaliation Charge and filed within ninety days of his receipt of the right-to-sue letter. The words "hostile work environment," and any such allegations, were absent from the timely filed original Complaint and his 2018 EEOC Retaliation Charge. *See generally* ECF No. 7; ECF No. 16-4. Plaintiff cannot now merge his retaliation and hostile work environment claims to avoid the statutory requirements under 42 U.S.C. § 2000e-5(f)(1) that require him to file his claims within ninety days of receiving the right-to-sue letter.

While Plaintiff is correct that the Fourth Circuit has recognized "that the creation of a hostile work environment can constitute a materially adverse action for purposes of a *retaliation claim*," *Carrico v. Prince George's Cty. Gov't*, No. 17-cv-0822-TDC, 2020 WL 1434102, at *3 (D. Md. Mar. 24, 2020) (emphasis added), this is distinct from alleging an independent hostile work environment claim. *See Lester v. Natsios,* 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.") (citations omitted); *Sonnier v. Diamond Healthcare Corp.,* 114 F. Supp. 3d 349, 360 (E.D. Va. 2015) (Clarifying that "[t]he hostile work environment plaintiff must establish the existence of an actual objectively hostile or abusive work environment, but the retaliation plaintiff need not make such showing. Instead, a retaliation plaintiff has satisfied her burden if

13

she alleges facts sufficient to permit a reasonable inference that she reasonably believed there was a hostile work environment in progress[.]"). Because Plaintiff failed to allege a hostile work environment claim in his original Complaint, he has failed to comply with the statutory requirements under 42 U.S.C. § 2000e-5(f)(1) and has failed to exhaust his administrative remedies.  Thus, to the extent Plaintiff intends to pursue actual claims of hostile work environment those claims are barred as to Counts I, II, [8] and III,[9] even while some of the underlying actions may be relevant to the retaliation claims.

In further determining the scope of the claims, therefore, the analysis used for retaliation claims, and not hostile work environment claims applies. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" which means that a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 113 (2002).  This means that discrete retaliatory acts are not actionable "if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. This is distinct from the Supreme Court's holding about hostile work environment claims. In noting that "[h]ostile environment claims are different in kind from discrete acts," the Supreme Court held that for hostile work environment claims, an allegation "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

---

[8] Plaintiff has cited no case law to show that failure to comply with 42 U.S.C. § 2000e-5(f)(1) can be corrected by Federal Rule of Civil Procedure 15(c). Therefore, the Court need not address Plaintiff's arguments, "*arguendo*," regarding Rule 15(c). *See* ECF No. 17 at 6–7.

[9] Plaintiff concedes that a hostile work environment "would not apply for FMLA retaliation," therefore the Court likewise grants Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint with respect to this claim without additional discussion.

However, because these are retaliation claims, Plaintiff's allegations are necessarily limited to the acts supporting the claim that fall within the 300-day window. *See Morgan*, 536 U.S. at 110. Given that Plaintiff filed his EEOC Charge against Defendant on October 18, 2018, ECF No. 14 ¶ 9, allegations in support of Counts I and II occurring prior to December 22, 2017, would be time barred.  Accordingly, the Court grants Defendant's Partial Motion to Dismiss as to Plaintiff's retaliation claims under Counts I and II stemming from allegations occurring prior to December 22, 2017.[10]

## B.  FMLA Retaliation

Under the FMLA, eligible employees are entitled to 12 weeks of leave during a 12–month period for covered reasons, including a serious health condition. 29 U.S.C. § 2612(a)(1)(D). Employers may not (1) "interfere with, restrain, or deny the exercise of" the right to that leave, or (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a). A claim based on the second is known as a retaliation claim. *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 546 (4th Cir. 2006).

Defendant argues that Plaintiff's FMLA retaliation claim based on the failure to appropriately address Plaintiff's request to reasonable accommodate him through a change in supervisor upon his return from FMLA leave is masking a claim for ADA discrimination, which Plaintiff has not properly alleged.[11] *See* ECF No. 16-1 at 20 (arguing that Plaintiff's allegation

---

[10] The Court need not address Defendant's second argument that Plaintiff failed to establish a causal connection to events occurring prior to December 22, 2017, *see* ECF No. 16-1 at 17–20, because the time-bar issue is dispositive of this claim.

[11] Defendant is not seeking dismissal of Plaintiff's retaliation claim under the FMLA with respect to factual allegations relating to Defendant marking Plaintiff AWOL from approximately January 2019 through March 2019 and failing to apply Plaintiff's earned and accrued PTO, which allegedly resulted in the suspension of Plaintiff's pay and benefits for over 100 hours while he was on approved FMLA leave. ECF No 16-1 at 20.

"is an improper attempt to interject an ADA discrimination claim into Count II when it should be enumerated as a separate count[.]"). Plaintiff, as "the master of his complaint," *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996), has the discretion to choose which claims to allege. *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). That Plaintiff could have brought suit under the ADA has no bearing on whether Plaintiff has sufficiently alleged retaliation under the FMLA. *See, e.g.*, *Hunter v. Scott*, No. 1:07-cv-448, 2007 WL 2381988, at *1 (S.D. Ala. Aug. 16, 2007) ("The mere fact (if it be a fact) that the plaintiff could have brought a [different] claim is simply irrelevant."). Further, "administrative exhaustion is not required to bring a FMLA suit." *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 630 n.22 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015). Defendant's "contrary characterization of *how* it allegedly violated the FMLA does not alter the nature of [Plaintiff's] claim." *Hogancamp v. Cty. of Volusia*, 316 F. Supp. 3d 1354, 1357–58 (M.D. Fla. 2018) (emphasis in original). As such, the Court's analysis will proceed under the FMLA retaliation standard and Defendant's substantive analysis with respect to standards under the ADA, *see* ECF No. 16-1 at 20–25, is immaterial.

To establish a prima facie case of retaliation under the FMLA, an employee must show (1) that he engaged in a protected activity, (2) that his employer took an adverse action against him, and (3) that there is a causal connection between the protected activity and the adverse action. *Yashenko*, 446 F.3d at 551. Although it is not strictly necessary for a plaintiff to establish all elements of a prima facie case in the complaint, a plaintiff must allege sufficient facts to support a plausible inference of retaliation and thereby raise a right to relief above the speculative level. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002); *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).

It is undisputed in the Fourth Circuit that taking FMLA leave, as Plaintiff has done, ECF No. 14 ¶ 42, is a protected activity. *Yashenko*, 446 F.3d at 551. An adverse employment action is one "that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). In the context of a retaliation claim, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted); *see also Bosse v. Baltimore Co.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (applying *Burlington* standard to FMLA retaliation claims).

Here, the adverse employment action is the failure to properly address Plaintiff's request for a reasonable accommodation for his disability, which was being exacerbated by Mr. Patel's supervision. From the face of the pleading, Plaintiff tries to repackage Count III as an ADA claim, though he pled retaliation in the Amended Complaint. *See* ECF No. 14 ¶¶ 56–57, 73, 77. First, courts "'do not recognize [ ] retaliation claims that are simply repackaged failure to accommodate claims.'" *Brittan-Powell v. Coppin State Univ.*, No. 19-cv-2902-ADC, 2020 WL 1809192, at *4 (D. Md. Apr. 9, 2020) (quoting *Koty v. Zaruba*, No. 15 C 2600, 2017 WL 4150684, at *7 (N.D. Ill. Sept. 19, 2017)). This means that "a plaintiff cannot sustain a retaliation or discrimination claim if the adverse actions the plaintiff alleges the employer took all stem directly from the employer rejecting requested accommodations." *Id.* (internal citation omitted).

Plaintiff's attempt to clarify that he is "not simply" pleading failure to accommodate as a materially adverse action is unpersuasive. *See* ECF No. 17 at 13. Plaintiff claims that, with

17

respect to Mr. Patel's continued supervision, the combination of the failure to accommodate and Defendant's "arbitrary and improper scrutiny of Plaintiff's accommodation, refusal to provide Plaintiff with a medically necessary workplace accommodation, and Defendant's failure and refusal to engage Plaintiff in an interactive process to determine if alternatives were available" constitutes retaliation.[12] *See id.* This argument does not save his claim because these allegations all relate to the core claim that the failure to provide an accommodation was retaliatory, which is not a viable claim. Further, a reasonable employee would not have found a failure to provide a department transfer accommodation[13] materially adverse such that he would not make a charge of retaliation. *See Bosse*, 692 F. Supp. 2d at 588; *see also Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016) ("[m]ere denial of a reassignment to a purely lateral position ('no reduction in pay and no more than a minor change in working conditions'), is typically not a materially adverse action.") (internal citations omitted).

Though Plaintiff may believe that Defendant failed to "engage in an interactive process" or to consider "alternative accommodations" to working under the supervision of Mr. Patel, ECF No. 14 ¶ 77, Plaintiff has chosen to file an FMLA retaliation claim, not an ADA reasonable accommodation claim. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345–47 (4th Cir. 2013) (analyzing the duty to engage in an interactive process in the context of failure to accommodate

---

[12] The Court takes judicial notice that the EEOC enforcement guidance provides that "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, U.S. Equal Employment Opportunity Commission (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.

[13] Plaintiff's reliance on *Edwards v. Montgomery Coll.,* No. 17-cv-3802-TDC, 2018 WL 4899311, at *1 (D. Md. Oct. 9, 2018) is misplaced for a few reasons. First, the plaintiff in *Edwards* alleged retaliation under the Rehabilitation Act, *see* 29 U.S.C. § 794, which prohibits discrimination against handicapped persons by any program or activity receiving federal funds, not the FMLA. *Edwards*, 2018 WL 4899311, at *10. Second, the *Edwards* plaintiff properly brought her failure to accommodate a disability claim under the ADA, not through an attempted FMLA retaliation claim. *See id.*, at *7.

under the ADA); *see also EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1049 (10th Cir. 2011) ("[A]n employer's duty to provide reasonable accommodations—or even to participate in the "interactive process"—is triggered under the ADA[.]"). Plaintiff's claim as analyzed under the FMLA retaliation standard fails to allege a materially adverse action. Accordingly, the Court grants Defendant's Partial Motion to Dismiss as to Count III with respect to allegations stemming from Mr. Patel's ongoing supervision.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 16, is granted. A separate Order shall follow.

Date: <u>September     27, 2021</u>                    <u>    /s/                            </u>
                                                        GEORGE J. HAZEL
                                                        United States District Judge